## Case No. 4,140.

### DUNDAS et al. v. BOWLER.

[3 McLean, 204.][1]

Circuit Court, D. Ohio. July Term, 1843.

Mr. Worthington, for plaintiffs.

Wright, Coffin & Fox, for defendant.

OPINION OF THE COURT. This bill was filed to foreclose a mortgage. The mortgage was executed by Bowler to Shoenberger, both being citizens of Ohio; and by the latter it was assigned to the Bank of the United States, of the state of Pennsylvania. The bank assigned to the plaintiffs, who are citizens of Pennsylvania, in trust for certain purposes. The question is, whether the court have jurisdiction of the case? The second section of the third article of the constitution of the United States provides, that, "the judicial power shall extend to controversies between citizens of different states." And the eleventh section of the judiciary act of 1789 declares, "the courts of the United States shall have jurisdiction where the amount in dispute exceeds five hundred dollars, between citizens of different states, one of whom is a citizen of the state where the suit is brought." And the same section provides, "that no circuit or district court shall have cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover such contents,

if no assignment had been made, except in cases of foreign bills of exchange." This statute is in conflict with the constitution. The constitution declares, the judicial power shall extend to controversies between citizens of different states; but the law declares that the court shall not have jurisdiction between citizens of different states, where the action is brought by the assignee of a chose in action, unless the assignor could have sued in the same court. I am aware that in Shute v. Davis [Case No. 12,828], it was held that the circuit court has no other jurisdiction than that which is given by the same statute. Where, to carry out a power given in the constitution, legislation is necessary, the judicial power cannot act until the mode of its exercise shall be provided. But whether the case under consideration is of this class, is the question. In De Lovio v. Boit [Case No. 3,776], the court say, that the expressions, "admiralty and maritime jurisdiction," in the constitution of the United States, "give jurisdiction of all things done upon and relating to the sea," &c. And in the case of the Post Master General v. Early, 12 Wheat. [25 U. S.] 136, the court held, "that the circuit courts of the United States have jurisdiction under the constitution, &c. of suits brought by the post master general of the United States on bonds given to him by a deputy post master, though no law required such bond." In the case of Prigg v. Pennsylvania, 16 Pet. [41 U. S.] 613, the court held, that, under the provision of the constitution in regard to fugitives from labor, the master may seize his slave and remove him from the state in which he is found, if he can do so without any breach of the peace. That this remedy is open to him; although the act of congress provides, that the claim of the master shall be asserted before some judicial officer. Now it would seem if, in this respect, the right of the master is not restricted, by positive legislation on the subject, much less is the right of a citizen of another state to bring suit in the federal court. If redress of a wrong is given, by the constitution to an individual, more clearly and safely is it given when the remedy is sought by action.

That the judicial power shall extend to controversies between citizens of different states, is clearly and in terms declared in the constitution. Where suit is brought by the assignee of a note against the maker, who lives in a different state, the case is literally within the constitution; and yet the act of congress declares the jurisdiction shall depend not alone upon the citizenship of the parties on the record, but also upon the citizenship of those by whom the note may have been negotiated. In so far as this law is restrictive of the constitutional right of a non-resident, it is, in my judgment, unconstitutional. If congress can impose this restriction, they may go farther, and impose other restrictions, as their discretion may

dictate. In this way a constitutional right may be modified or taken away in whole or in part, as congress may determine. This is a new and most dangerous principle, and cannot be maintained. It is too late to say that a constitutional right, though explicitly given, cannot be carried into effect, except through legislative action. No legislation was required, and the only inquiry is, whether a legislative act can abrogate the right thus given. I am aware that the practice of the courts of the United States has been different, and that, by frequent decisions, they have sanctioned the law; and I am also aware that this has been done without inquiry, as to the validity of the act. Its constitutionality has not been questioned, and, after so many years of acquiescence, it may excite some surprise that it is now questioned. Satisfied as I am that the act restrictive of a constitutional right should be held void, yet, by the course of decisions made on the act under consideration, I cannot rest my decision on its unconstitutionality. I have referred to it with the view not to declare it void, but to show, that, as it is clearly restrictive of a constitutional right, it should receive a liberal construction. Keeping this in view, the decisions under the act will be referred to.

Effect was given to the eleventh section, in the case of Turner v. Bank of North America, 4 Dall. [4 U. S.] 8, and no doubt of its constitutionality is suggested. And so in Montalet v. Murray, 4 Cranch [8 U. S.] 46; Mollan v. Torrance, 9 Wheat. [22 U. S.] 537. But the case of Sere v. Pitot, 6 Cranch [10 U. S.] 332, is supposed to have a more direct bearing on the point now before us. That was a case where an alien, who was appointed a syndic of an insolvent's estate, and who brought a suit in the district court, which, the court held, was not sustainable, as the insolvent could not have sued in his own name.

Now the eleventh section applies to citizens of states and not residents or citizens of a territory. It is well settled that a citizen of a territory cannot sue in the federal courts of a state, because he cannot, within the meaning of the law, be called a citizen of a state. The above act, therefore, did not apply to the case before the court, unless under the provision that the district court should possess the same jurisdiction as the court of Kentucky. The chief justice, in giving the opinion of the court, says, that an assignment of an insolvent's effects by operation of law, is within the eleventh section, and that it embraces cases in equity as well as at law. He considers an unsettled account as a chose in action, and that the items of the account may be denominated the contents of a chose in action. This would seem to be reaching after objections against the jurisdiction of the court, and on ground most unsatisfactory to my mind. A chose in action embraces, in one sense, all rights of action. A judgment is a chose in action, and so is a deed for land; but these could not have been within the mischief which the statute intended to remedy. It has always seemed to me that the eleventh section was intended to apply to negotiable instruments, as by the assignment of such instruments only could the statute be evaded. The assignment of an instrument not negotiable would only convey an equity, and the remedy in such a case would be, by an action in the name of the assignor. This would be no fraud upon the law, as it could not give jurisdiction to the federal court. Indeed this jurisdiction could only be acquired by an assignment of a negotiable instrument. No other description of paper could be so assigned as to evade the law. An assignment of a mere equity, to give jurisdiction, could easily be exposed and defeated. In his plea or answer the defendant could set up this defence, and the complainant could not avoid it. An executor or administrator, it has often been held, is not within the law; and that he may sue in the federal court, though the deceased, whose interests he represents, was a citizen, at the time of his decease, of the same state as the defendant. It is difficult to make a distinction between this case and the suit by the syndic. The syndic was an alien, and of course occupied the same ground, in regard to the jurisdiction of the court, as if he had been a citizen of another state. As administrator he could have sued, but could not as syndic. In both cases, by operation of law, he was vested with the interests he represented. Notes payable to an individual or bearer are not within the statute. Neither is a suit by the indorsee against the indorser. And the right of the holder of a bill to strike out intermediate indorsements in blank, and fill up the indorsement to himself by the payee of the bill, is well established. Now here may be an evasion of the act, and it would be very difficult if not impossible to detect it. Where a judgment of a state court between citizens of different states, had been assigned to a citizen of the same state with the original plaintiff, it was held that the assignee may sue in the circuit court, although the note on which the judgment was obtained in the state court could not have been sued on in the federal court. Bean v. Smith [Case No. 1,174]. A conveyance of land is not a chose in action. Briggs v. French [Case No. 1,871].

This suit is on a mortgage, which is a deed subject to all the laws which relate to conveyances. It must be recorded, &c. as other titles to real estate are required to be recorded. And this is notice to all subsequent purchasers. The mortgagee has a conditional estate in fee simple. After condition broken, ejectment may be maintained on a mortgage. Dexter v. Harris [Case No. 3,862]. The assignee of a mortgage may bring an ejectment, and it is supposed that no one could

doubt his right to sue in the federal court, without regard to the place of assignment. He claims by deed, and he claims the possession of real estate. A bill of foreclosure acts equally upon the deed and the land, as the action of ejectment. Suppose a deed purporting to convey a legal estate, by reason of some defect of title in the grantor or form of the deed, conveys only an equity. Could not the grantee or assignee sue in the circuit court of the United States? And yet if the deed conveyed only an equity, that equity could not be asserted by the grantor or assignor in the federal court. The transfer or conveyance in such a case is not within the statute. The mischief to be guarded against is not found in such a transaction. And yet this is a chose in action, for every possible right on which an action may be maintained may be so denominated. The statute, then, does not reach every transfer of a right on which an action may be brought. And if the statute mean less than this, what limit shall be imposed on its meaning. The only just limit must arise from the nature of the provisions, and the subject on which it acts. That the statute acts upon negotiable paper is clear, but that it acts beyond this is difficult to maintain. That it does not act on conveyances of real estate, either equitably or legally, would seem to be undoubted. The mortgage was executed to Shoenberger, and he conveyed the premises to the Bank of the United States. Now if this conveyance had been unconditional, there could be no doubt that the bank or its assignee could sue in this court. But does the condition annexed to the estate affect the jurisdiction of this court. It is not less a conveyance of the estate with the condition than without it, except that on the performance of the condition, the estate may be defeated.

I do not look into the New York reports to ascertain the nature of the mortgagee's interest. In so far as the courts of that state differ in this respect from the English rule and the decisions of the federal courts, they are not to be regarded. The mortgagee, at law, has the legal estate, after default in payment; and by a foreclosure of the mortgage, the estate becomes absolute. That by the modern practice there is rarely a strict foreclosure, does not affect the question under consideration. A sale of the land is generally decreed, if the money be not paid within the time limited. But the title of the mortgagor is foreclosed under the decree, and the sale is directed from equitable considerations. The bill of foreclosure acts upon the land as fully as an action of ejectment brought to recover possession of it. And this being the case, the transfer of title is not within the 11th section. Upon the whole, we think the court have jurisdiction, in this case, in the form brought; and that this view does not conflict with any decision made. The court will decree the foreclosure as prayed, and direct the property to be sold, &c.